(C.D. 3742)

JEROME TRADING CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 13, 1969)

*Edmund Dollinger* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: These protests involve merchandise manufactured in Japan and imported at the port of New York. The items are described on the entry invoices as "Masonry Saw Blades", and "Metal Cutting Saw Blades". The so-called blade to cut masonry is made of silicon carbide while the one made to cut metal is made of aluminum oxide.

Both articles were assessed by the customs officials at 21 cents per pound plus 17 per centum ad valorem, under item 519.84 of the Tariff Schedules of the United States (TSUS), as abrasive wheels, bonded with synthetic resins, other than solid natural stone wheels, or diamond wheels. Plaintiff claims under these protests that the imported articles should be assessed instead at only 8 per centum ad valorem, as circular saw blades, under TSUS item 649.17.

The classification and claimed assessments, prefaced by the headnotes pertinent to each, are provided for in TSUS as follows:

Classified:

Schedule 5, Part 1.

Subpart G. – Abrasives and Abrasive Articles

Subpart G headnotes:

1. This subpart covers certain crude minerals commonly used for making abrasives and abrasive articles, * * *. The remaining provisions of this subpart apply to papers, cloths, stones, and other articles which are cut or fashioned from natural stone or made from natural or artificial abrasive materials usually with the use of glues, resins, rubber or other binding materials, and which are designed and used for grinding, sharpening, smoothing, polishing, trueing, cutting, or similar purposes. The provisions of this subpart do not cover—

\* \* \* \* \* \* \*

(viii) tools to which abrasives have been applied but which have other functioning or working elements such as cutting teeth, edges, grooves, and flutes (see schedule 6).

2. For the purposes of this subpart—

\* \* \* \* \* \* \*

(b) the term *"wheels"* embraces rotary cutters, disks and other circular bodies designed to rotate on a central axis.

\* \* \* \* \* \* \*

Millstones, abrasive wheels, and abrasive articles not specially provided for:

\* \* \* \* \* \* \*

Abrasive wheels:

\* \* \* \* \* \* \*

Other:

| | |
|---|---|
| 519.84 | Bonded with synthetic resins _____ 21¢ per lb. + 17% ad val. |

Claimed:

Schedule 6, Part 3.

Subpart E. – Tools, Cutlery, Forks and Spoons

Subpart E headnotes:

1. * * *, this subpart covers only articles with a blade, working edge, working surface or other working part of—

(i) base metal;
(ii) metallic carbides on a support of base metal;
(iii) natural or synthetic precious or semiprecious stones on a support of base metal; or
(iv) abrasive materials on a support of base metal, provided that the articles have other functioning or working elements such as cutting teeth, edges, grooves, or flutes.

\* \* \* \* \* \* \*

Non-mechanical saws, blades for mechanical or non-mechanical saws (including blades in continuous lengths), and metal teeth or cutting segments and other metal parts of such saws and blades:

\* \* \* \* \* \* \*

Blades for mechanical or non-mechanical saws:

\* \* \* \* \* \* \*

649.17 Circular saws blades_____ 8% ad val.

Articles representative of those imported are in evidence. (Exhibits 1-A and 1-B.) Examination reveals that they are circular bodies (wheels or discs) 6 inches in diameter with a diamond-shaped cut-out in the center. On one side of the wheel is a circular piece of metal, 2 inches in diameter, also with the center cut out in the shape of a diamond. The metal piece appears to be embedded in the wheel and crimped to the diamond-shaped center which it overlays on the one side. A webbing of some sort is bonded into the abrasive and reinforces the wheel.

On trial plaintiff adduced testimony from Mr. George Goldstein, president of Jerome Trading Corp. Defendant called Mr. Wendell C. Forsman and Mr. John E. Taylor, both associated with Norton Company, manufacturers of grinding wheels and bonded abrasive products, with its principal office at Worcester, Mass. The testimony is, for the most part, inconclusive of the material issues in this case. Since we do not lean on the testimony to support our decision, we shall touch on it but briefly.

Mr. Goldstein stated that his experience spanned 42 years in the wholesale hardware business, including buying and selling saw blades. The imported articles, being a relatively new item, they had handled for only 4 years. He testified that the metal center in the wheel is used to support the abrasive wheel when it is used on the post of an electric power saw. Without the metal piece he stated that the wheel would fall apart as it revolved. It is undisputed that the edge of the wheel does the cutting and that the sides of the wheel should not be used.

Mr. Goldstein distinguished the abrasive imported articles from a grinding wheel (exhibit 3) on the basis that the latter is primarily used for sharpening or grinding but not cutting. He stated that he sells the imported articles under the name circular saw and metal cutting saw and has advertised them as masonry saw blades and metal cutting saw blades. (Exhibit 2.) He identified a domestically manufactured article, said to be substantially similar to the imported articles, made by Skokie Saw, Skokie, Illinois, called an "Abrasive Cut-Off Blade". (Exhibit 4.) Mr. Goldstein further stated that the imported articles are used with electric power saws which may or may not have an inside flange on the post to which the imported article is fitted and held by a nut and bolt. The flange holds the wheel in place and, we assume, reduces the "play" as it revolves.

Defendant's two witnesses testified that Norton Company makes a product (exhibit A) similar to the imported articles which it sells as reinforced resinoid cut-off wheels, or abrasive wheels, but never as circular saw blades. The Norton tool is used for periphery grinding. The periphery is the edge. In their opinion, the metal piece in the center of the imported article is a convenience in manufacture but does not lend support to the wheel as such. The Norton Company catalogue refers to their product as reinforced "Cut Off Wheels – * * * a natural for cutting sheet metal and structural steels." (Exhibit 5.) Mr. Taylor stated that an abrasive wheel cuts by the abrasive action of grinding or corroding and a saw cuts by biting into the material.

No one questions the fact that the imported articles are abrasive wheels, bonded with synthetic resin. They are, as stated in the testimony, tools with a cutting or working edge. However, the testimony is not particularly helpful on the twofold question of whether the imported articles are "tools to which abrasives have been applied", or "articles * * * with a working part [edge] of * * * abrasive materials on a support of base metal," *with other functioning or working elements such as cutting teeth, edges, grooves, or flutes.* The quoted and emphasized language, taken from the headnotes of TSUS items 519.84 and 649.17, is new matter not previously contained in any of the tariff acts of the United States. Our task is to construe the headnotes in a way that will give force and effect to all the language. Whatever the construction, it should be sensible and in harmony with the purpose of the provisions. *Pitney-Bowes, Inc.* v. *United States*, 59 Cust. Ct. 181, C.D. 3116.

For the reasons we shall now discuss, we hold that plaintiff has failed to overcome the presumption that the imported articles were correctly classified and assessed under TSUS item 519.84.

Plaintiff contends that the imported articles meet the basic standards recited above for exclusion under subpart G of schedule 5, *supra*, and inclusion under subpart E of schedule 6, *supra*. At the risk of over

simplification, as we see and now know them, the imported articles are not excluded from schedule 5 for the reason that it is not shown that they are tools to which abrasives have been applied. Abrasives have not been applied to the tool. A metal piece has been applied to the tool and perhaps the webbing has been applied to the tool. But if we take away the abrasive material there is literally no tool to speak of. The imported articles are a completely abrasive article albeit bonded and reinforced with other materials. The abrasive is the functioning or working element and the part of the tool where the abrasive functions is the edge, but there is no other functioning or working element as required by the headnote if the tool is to be excluded from schedule 5. Defendant makes much the same point, in its stated argument, that the only tools excluded are those to which abrasives have been applied and which have a functioning or working element other than the abrasive material, such as cutting teeth, edges, grooves or flutes. (Defendant's brief, page 11.)

Plaintiff, it can be said, well recognizes that tools to which abrasives have been applied and which are excluded from TSUS item 519.84, are parenthetically tied to schedule 6. This is so because, in a real sense, the headnotes in subpart G (schedule 5) and subpart E (schedule 6) complement each other. The one, subpart G, excludes tools to which abrasives have been applied but which have other functioning or working elements such as cutting teeth, etc. The other, subpart E, includes the tools excluded from subpart G, provided the tool has a blade or some working part of base metal, or, as in the situation before us, a working part of *abrasive materials on a support of base metal*, provided that, without the abrasive materials, the tool has some other functioning or working element such as cutting teeth, edges, grooves or flutes. The sense of both headnotes is that an abrasive material is applied to a tool or an article. Subpart G states the sense of application to a tool explicitly. It is implied in the language "abrasive materials on a support of base metal" recited in subpart E. "On" in the latter phrase we construe to mean applied to a support of base metal. Also, as in the case of subpart G, the cutting teeth or other edge must be present independent of the abrasive element.

The construction we have put on the schedule 5, subpart G, and schedule 6, subpart E headnotes is supported by the "Nomenclature for the Classification of Goods in Customs Tariffs" (usually known as the "Brussels Nomenclature"), one of the systems which "exerted the greatest influence on the arrangement of the proposed revised [TSUS] schedules." (Tariff Classification Study, Submitting Report, 1960, at page 8.) Cf. *Pitney-Bowes, Inc.* v. *United States*, 59 Cust. Ct. 181, C.D. 3116; *F. L. Smidth & Company* v. *United States*, 59 Cust. Ct. 276, C.D. 3141. TSUS items 519.84 and 649.17 are, in substance, a restatement of substantially similar provisions designated in the Brus-

sels Nomenclature as items 68.04 and 82.02. The headnotes to the said Brussels items, in explaining what the item classifications particularly cover, succinctly point up how the classifications thereunder complement each other, and the distinctions in the respective classifications of grinding wheels and saw blades with teeth fitted or covered with metallic carbides (i.e. abrasive material on a support of base metal) as follows:

(3)  *Grinding wheels, heads, discs, points,* etc. [item 68.04], as used on machine tools, electro-mechanical or pneumatic hand tools, for the trimming, polishing, sharpening, trueing or sometimes for the cutting of metals, stone, glass, plastics, ceramics, rubber, leather, mother of pearl, ivory, etc. Except for some cutting discs, which may be of considerable diameter, these goods are usually much smaller than those described above, and they may be of any shape, (e.g., flat, conical, spherical, dished, ring-shaped, recessed or stepped) ; they may also be plane or profiled at the edges.

The heading covers such tools not only when they are predominantly of abrasive materials, but also when they consist of only a very small abrasive head on a metal shank, or of a centre or core of rigid material (metal, wood, vulcanised fibre, artificial plastics, cork, etc.) on to which compact layers of agglomerated abrasive have been permanently bonded (e.g., cutting discs of metal, etc., fitted with rims or with a series of peripheral inserts of abrasive material). The heading also covers abrasive elements for hones, whether or not they are mounted in the carriers required for their fixation in the honing spindles.

It should, however, be noted that certain abrasive tools are *excluded* and fall within *Chapter 82. The latter Chapter, however, covers only those tools with cutting teeth, flutes, grooves, etc., which retain their identity and function even after application of the abrasive material, (i.e., tools which, unlike those of the present heading, could be put to use even if the abrasive had not been applied).* Saws with cutting teeth covered with abrasive therefore remain in *heading 82.02.* Similarly crown drills as used for cutting discs from sheets of glass, quartz, etc., are classified in the present heading if the working edge is smooth apart from the abrasive coating, but in *heading 82.05* if toothed (whether or not coated with abrasive). [Emphasis, in part, added.] [Explanatory Notes to the Brussels Nomenclature, 1955, at page 585.]

*Tools, cutlery, etc., do not in general fall within the present Chapter unless the blade, working edge, working surface or other working part is of base metal* [item 82.02] ; *provided,* however, that this condition is met, they remain within the Chapter even if fitted with non-metallic handles, bodies, etc., of a weight exceeding that of the metallic working part (e.g., a wooden plane with a metal blade). The Chapter also, however, includes tools if the

*working part is of metallic carbides or of natural, synthetic or reconstructed precious or semi-precious stones* (e.g., black diamonds) *fitted on to a support of base metal;* further, in certain cases, the *working part may be of base metal fitted or covered with abrasive materials.* There are *exceptions* to these general rules in the case of certain articles specifically mentioned in the headings (e.g., portable forges and grinding wheels mounted on frameworks). Moreover, very few abrasive tools remain within the scope of the present Chapter (see Explanatory Notes to headings 82.02 and 82.05), since *heading 68.04* covers grinding wheels and the like (including grinding, sharpening, polishing, trueing and cutting wheels, heads, discs and points), of natural stone, of agglomerated abrasives, or of pottery, with or without cores, shanks, sockets, axles and the like of other materials, but not mounted in frameworks.

\* \* \* \* \* \* \*

Saw blades may have integral teeth, or be fitted with inserted teeth or segments (such as some circular saws). The teeth may be wholly of base metal, or of base metal fitted or covered with metallic carbides, diamond (black diamonds in particular) or, in some cases, with abrasive powders. In some saws the teeth may be replaced by diamonds or by elements of metallic carbides set around the periphery of the disc. Toothless discs fitted with abrasive rims (e.g., for cutting marble, quartz or glass), or with a series of peripheral inserts of abrasive material are, however, *excluded* (see Explanatory Note to heading 68.04). [Explanatory Notes, *supra*, at pages 739, 741.]

It not having been shown that the imported articles are circular saw blades with a working edge of abrasive materials on a support of base metal with other functioning or working elements, such as cutting teeth, edges, grooves, or flutes, the protests are overruled. Judgment will be entered accordingly.